UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Aaron Findley,  Civil No. 10-186 (ADM/FLN)

      Petitioner,

v.  **REPORT AND RECOMMENDATION**

State of Minnesota and
Jessica Symmes,

      Respondents.

___

Petitioner, *Pro Se*.
Meredith A. Erickson, Assistant Rice County Attorney, for Respondents.

___

**THIS MATTER** came before the undersigned United States Magistrate Judge on a Petition for Writ of Habeas Corpus filed by Petitioner [#1]. On January 24, 2010, the Court ordered that Respondents file an answer to the petition within thirty (30) days. (Doc. No. 5.) Rather than file an answer, on February 23, 2010, Respondents filed a motion to dismiss and a memorandum in support thereof. (Doc. Nos. 7 and 8.) The Court has construed Respondents' memorandum (Doc. No. 8) as their answer and provided Petitioner with a further opportunity to submit a reply brief. (Doc. No. 11.) Petitioner has not filed a reply memorandum in support of his petition for habeas relief by the court-imposed deadline of July 15, 2010.

The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons which follow, this Court recommends that Petitioner's Petition for a Writ of Habeas Corpus [#1] be **DENIED**.

# I. BACKGROUND

Petitioner Aaron Findley ("Petitioner") is currently incarcerated at the Minnesota Correctional Facility at Oak Park Heights. He is serving a 144-month sentence for his conviction

of first-degree criminal sexual conduct in violation of Minn. Stat. § 609.342. The Minnesota Court of Appeals affirmed his conviction on November 4, 2008. *State v. Findley,* 2008 WL 4776934, *1–5 (Minn. Ct. App. Nov. 4, 2008). The Minnesota Supreme Court denied review on January 28, 2009. *Id.*

The undersigned accepts the facts of this case as stated by the Minnesota Court of Appeals:

> On January 16, 2007, [Petitioner] Aaron Findley's estranged wife, D.M.F., called 911 to report that [Petitioner] had raped her and stolen her cell phone and car. The following day, upon learning that the police wanted to speak with him, [Petitioner] turned himself in. While in custody, [Petitioner] was interviewed by an investigator of the Rice County Sheriff's department.
>
> At the outset of the interview, the investigator informed [Petitioner] of his *Miranda* rights. The investigator then stated, "Ok and having these rights in mind do you wish to talk to me now?" [Petitioner] responded, "I was told not to." The investigator understood [Petitioner's] response as a decision to remain silent and proceeded to explain the booking process to [Petitioner]. [Petitioner] asked questions of the investigator throughout the explanation of the booking process, including why he was under arrest and what would happen next. During this process, [Petitioner] stated, "I can tell you it was consensual" and "Well, I'll tell you my side of it." After each statement, the investigator reminded [Petitioner] of his invocation of his right to remain silent and returned to the explanation of the booking process and [Petitioner's] arrest.
>
> As the explanation of the booking process continued, the investigator asked [Petitioner] to remove his shirt so the investigator could look for scratches. [Petitioner] showed the investigator his torso and stated that he only had pimples on his torso. The investigator indicated that one of the markings appeared to be a scratch and not a pimple. [Petitioner] stated that the marks were scratches. The investigator then asked if he could photograph the scratches and [Petitioner] stated he was told not to let the investigator take photos of his body. No photos were taken. Immediately after informing the investigator that he was told not to let the investigator take photos of his body, [Petitioner] stated "I was told that I need to keep this as quiet as I can and just tell you that ..." and proceeded to give a brief statement saying that he and his wife had consensual sex and that he had permission to borrow her cell phone and car. The investigator then ended the recording by stating that there was not going to be any more discussion of the alleged incident.
>
> Shortly after the recording equipment was turned off, it was turned back on at [Petitioner's] request. The investigator testified at the omnibus hearing that he did

2

not ask any questions of [Petitioner] during the approximately minute and a half break in the recording. When the second recording began, [Petitioner] confirmed that he wanted the recording device turned on so that he could tell his side of the story and further confirmed that the investigator did not do anything to try to change his mind about his original desire to remain silent. [Petitioner] then proceeded to give a 24-minute statement providing his version of what had happened on January 16, 2007. Throughout the statement, [Petitioner] indicated that he had sex with D.M.F. but maintained that it was consensual. [Petitioner] admitted to taking D.M.F.'s cell phone and car but stated that he asked her for permission before taking the items. The investigator questioned [Petitioner] about the scratches that he had seen previously. [Petitioner] stated that the scratches could have been from a number of things but stated that he would assume that they came from the sexual encounter with D.M.F.

At an omnibus hearing, [Petitioner] moved to suppress the entire recording. The district court heard testimony from the investigator, reviewed the audio recordings, denied [Petitioner's] motion to suppress, and admitted the entire recording into evidence at trial. A jury convicted [Petitioner] of two counts of first-degree criminal sexual conduct and [Petitioner] was sentenced.

*Findley,* 2008 WL 4776934 at *1–2.

The Minnesota Court of Appeals affirmed Petitioner's conviction and determined that there had been no violation of Petitioner's right to remain silent. The Court held that, based on the record, "the district court did not clearly err in finding that [Petitioner] reinitiated conversation with the investigator and that the investigator honored [Petitioner's] right to remain silent." *Id.* at *5. Accordingly, the Court of Appeals affirmed "the district court's determination that [Petitioner's] full statement was admissible." *Id.*

In the instant action, Petitioner alleges that his conviction resulted from a violation of his Fifth Amendment right to remain silent. Petitioner appears to maintain that his constitutional rights were violated by the trial court's admission of his statement to law enforcement.[1] The

---

[1] Aside from a general claim in his petition for a writ of habeas corpus that his "conviction [was] obtained, in part, by a violation of [his] Fifth Amendment right to remain silent" (Doc. No. 1 at 4), Petitioner does not specifically articulate an argument that the state court decisions related to the admission of his statement were contrary to, or involved an unreasonable application of, clearly established federal law. Still, the Court will review

3

issue of Petitioner's invocation of his right to silence was raised at the trial level, and again on appeal to the Minnesota Court of Appeals. Thus, the record reflects that Petitioner has exhausted his state court remedies on this claim.

## II. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") sets forth the standard that governs this Court's review of habeas corpus claims raised by state prisoners. The relevant portion of the AEDPA, 28 U.S.C. § 2254(d), provides that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

In *Williams v. Taylor*, 529 U.S. 362 (2000), the United States Supreme Court discussed the meaning of this statute, and how it should be applied by the federal district courts. The Court held that:

> [A] state-court decision can be "contrary to" this Court's clearly established precedent in two ways. First, a state-court decision is contrary to this Court's precedent if the state court arrives at a conclusion opposite to that reached by this Court on a question of law. Second, a state-court decision is also contrary to this Court's precedent if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours . . . .
>
> Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id*. at 405, 413. The Court further explained the "unreasonable application" clause:

---

the state court decisions pursuant to the standard set forth in 28 U.S.C. § 2254(d).

4

> A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable . . . . [A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id*. at 409, 411.

A writ of habeas corpus may also be available where the state court's resolution of a case is based on "an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(2). In other words, habeas relief may be granted if the state court's judgment is based on findings of fact that could not reasonably be derived from the evidentiary record. When reviewing a state court decision, however, a "federal court . . . presumes that the state court's factual determinations are correct," and that presumption "may be rebutted only by clear and convincing evidence." *Lee v. Gammon*, 222 F.3d 441, 442 (8th Cir. 2000) (citing 28 U.S.C. § 2254(e)(1)).

Therefore, a federal district court is not permitted to conduct its own de novo review of a habeas petitioner's constitutional claims. Habeas relief cannot be granted unless the petitioner has identified, and substantiated, a specific error committed by the state courts. Moreover, he must show that the state courts committed the type of error that is actionable under § 2254(d), as that statute has been interpreted by the Supreme Court in *Williams*. Demonstrating actionable error requires that a petitioner, as a threshold matter, present a federal question in his petition for relief. *See* 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.")

5

# III. CONCLUSIONS OF LAW

**A.     The admission at trial of Petitioner's statement to law enforcement was not "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."**

Petitioner claims that he is entitled to habeas relief on the basis that the admission at trial of his statement to law enforcement violated his right to silence under the Fifth Amendment to the United States Constitution.

### 1.     Standard for Waiver of *Miranda* Rights

In order for evidence obtained as a result of custodial interrogation to be used against a defendant at trial, the Fifth Amendment requires that law enforcement advise the individual of his constitutional rights and that he make a valid waiver of those rights. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). Before questioning begins, a suspect in custody must be informed of the following: (1) that he has the right to remain silent; (2) that his statements may be used against him in a court of law; (3) that he has the right to an attorney; and (4) that if he cannot afford an attorney, one will be appointed. *Id.* at 444, 469–70, 478–79. Law enforcement officials must use either this formulation of the warnings or "other procedures [that] are at least as effective in apprising accused persons of their right of silence and in assuring a continuous opportunity to exercise it." *Id.* at 467. After the warnings are given, if the suspect indicates that he wishes to assert these rights, the interrogation must stop. *Id.* at 473–74. Statements elicited from a suspect in violation of *Miranda* are inadmissible. *Stansbury v. California*, 511 U.S. 318, 322 (1994).

Once advised of his *Miranda* rights, a suspect's waiver of his Fifth Amendment privilege against self-incrimination is only valid if it is voluntarily, knowingly, and intelligently made. *Miranda*, 384 U.S. at 444; *United States v. Syslo*, 303 F.3d 860, 866 (8th Cir. 2002); *see also*

6

*Berghuis v. Thompkins,* 130 S. Ct. 2250, 2260 (June 1, 2010). A waiver is made knowingly if it is "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran v. Burbine*, 475 U.S. 412, 421 (1986). It is voluntary if it is "the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Id*. It is the Government's burden to show by a preponderance of evidence that the suspect's waiver meets these standards. *Miranda*, 384 U.S. at 473; *Colorado v. Connelly*, 479 U.S. 157, 168 (1986).

In order to invoke one's Fifth Amendment right to silence, a suspect must do so unambiguously. *See Thompkins*, 130 S. Ct. at 2260 ("Thompkins did not say that he wanted to remain silent or that he did not want to talk with the police. Had he made either of these simple, unambiguous statements, he would have invoked his right to cut off questioning . . . . Here he did neither, so he did not invoke his right to remain silent."); *United States v. Ferrer-Montoya*, 483 F.3d 565, 569 (8th Cir. 2007) ("Indirect, ambiguous, and equivocal statements or assertions of an intent to exercise the right to remain silent are not enough to invoke that right for the purposes of *Miranda*."). In *Thompkins*, the Supreme Court recently summarized the principles governing the implicit waiver of one's right to remain silent following the giving of a *Miranda* warning:

> If the State establishes that a *Miranda* warning was given and the accused made an uncoerced statement, this showing, standing alone, is insufficient to demonstrate 'a valid waiver' of *Miranda* rights . . . The prosecution must make the additional showing that the accused understood these rights. . . . Where the prosecution shows that a *Miranda* warning was given and that it was understood by the accused, an accused's uncoerced statement establishes an implied waiver of the right to remain silent.

*Thompkins*, 130 S. Ct. at 2261–62.

## 2. Review of the Minnesota State Courts' Decisions

Petitioner argued on appeal that the police violated his rights under the Fifth Amendment by failing to honor his assertion of his right to remain silent.

In their evaluation of Petitioner's statements, both the district court and appeals court considered the exchange between Petitioner and the interviewing officer. Both state courts determined that Petitioner "was impulsively and spontaneously making statements and actively asking questions of the investigator" and "that the investigator was honoring [Petitioner's] right to remain silent as he explained the booking process, why [Petitioner] was under arrest, and what would happen next." *Findley,* 2008 WL 4776934 at *4. Additionally, the courts concluded that "none of the statements made by the investigator were designed to illicit [sic] incriminating responses" and that "the investigator made deliberate attempts to ensure that [Petitioner] did not make any incriminating statements and repeatedly reminded [Petitioner] that they were not going to talk about the alleged assault." *Id.* Ultimately, the district court declined to suppress Petitioner's statement, the jury found Petitioner guilty of the charged offenses, and the court of appeals ultimately affirmed his conviction.

The Minnesota Court of Appeals highlighted the applicable standards and stated the following:

> When police take a suspect into custody, the suspect must be advised of his Fifth and Fourteenth Amendment rights to remain silent. *State v. Ganpat,* 732 N.W.2d 232, 238 (Minn. 2007) (citing *Miranda v. Arizona,* 384 U.S. 436, 478-79, 86 S.Ct. 1602, 1603, 16 L.Ed.2d 694 (1966)). Once a defendant has unambiguously invoked his right to remain silent, the custodial interrogation must cease. *State v. Day,* 619 N.W.2d 745, 750 (Minn. 2000) (citing *Michigan v. Mosley,* 423 U.S. 96, 101-03, 96 S.Ct. 321, 325-26, 46 L.Ed.2d 313 (1975)). However, a defendant may waive his *Miranda* rights if he "initiates further communication, exchanges, or converses with the police." *State v. Parker,* 585 N.W.2d 398, 405 (Minn. 1998) (citing *Edwards v. Arizona,* 451 U.S. 477, 484-85, 101 S.Ct. 1880, 1884-85, 68

> L.Ed.2d 378 (1981)). The admissibility of statements made after a defendant invoked his right to remain silent "depends on whether that right was 'scrupulously honored.' " *Day,* 619 N.W.2d at 750 (quoting *Mosley,* 423 U.S. at 104, 96 S.Ct. at 326) . . . .

*State v. Findley,* 2008 WL 4776934 at *2.

The district court admitted Petitioner's statement in its entirety and relied, in part, on *Edwards* and *Mosley* in its order and memorandum denying Petitioner's suppression motion. (Doc. No. 8, Ex. 1 at 40, 41.) The district court concluded that Petitioner voluntarily waived his right to remain silent (but only when the recording was turned on for a second time) and that his previous statements to the investigator (including the admission that marks on his body were scratches) were self-initiated and spontaneous. (Doc. No. 8, Ex. 1 at 40-42.) The district court noted that "the investigator was not questioning [Petitioner] about the incident when the three pre-waiver statements were made, instead [Petitioner] offered these statements throughout the course of the conversation about the details of his arrest. Therefore, these statements were not the product of a custodial interrogation and should not be suppressed." (Doc. No. 8, Ex. 1 at 41.)

    a.    **The investigator did not "scrupulously honor" Petitioner's assertion of his right to silence at the time of his "pre-waiver" statement.**

This Court concludes that the investigator did not "scrupulously honor" Petitioner's assertion of his right to silence and disagrees with the Minnesota courts' determination that the three pre-waiver statements were all spontaneously made and were not the product of interrogation. In particular, this Court disagrees that "none of the statements made by the investigator were designed to illicit [sic] incriminating responses." *Findley,* 2008 WL 4776934 at *4.

When a suspect invokes his right to silence, law enforcement must terminate the interrogation. *Miranda v. Arizona*, 384 U.S. 436, 473-74 (1966) ("If the individual indicates in

any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease."). Interrogating officers must "scrupulously honor" a suspect's invocation of the right to silence. *Michigan v. Mosley*, 423 U.S. 96, 102-04 (1975). Interrogation "refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 302 (1980).

It appears to the Court that the interviewing officer's request for Petitioner to lift and remove his shirt as well as his inquiry as to whether Petitioner had "any scratches" on him "or anything like that," were indeed "designed" to elicit incriminating responses. These statements were not of the type "normally attendant to arrest and custody," and the investigator should have known that his request for Petitioner to raise his shirt and his questions about "scratches" were "reasonably likely to elicit an incriminating response" from Petitioner. *See Innis*, 446 U.S. at 301-02 ("[S]ince the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response."). It is this Court's opinion that the officer's intention with respect to these requests was to inspect Petitioner's chest for scratches or injuries he may have sustained during the course of the sexual encounter at issue, which was the subject of the investigation.

This Court concludes, in its independent judgment, that the state courts erroneously applied the principles of *Rhode Island v. Innis*, 446 U.S. 291, to the facts of the instant case. This conclusion does not end the analysis. *Williams v. Taylor* teaches that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the

relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." 29 U.S. 362, 411 (2000). The error in this case did not rise to the level of an unreasonable application of clearly established federal law as determined by the United States Supreme Court. Thus, the error does not entitle Petitioner to a writ of habeas corpus.

> **b.** **The Minnesota courts' conclusion that Petitioner waived his right to silence was neither "contrary to" nor "involved an unreasonable application of, clearly established Federal law."**

The admissibility of Petitioner's second ("post-waiver") statement ultimately turned on whether Petitioner, having initially asserted his right to remain silent, waived his right to silence by reinitiating a conversation with law enforcement. This Court evaluates the Minnesota courts' application of Supreme Court precedent to the facts found by the state courts.

The Minnesota courts relied upon *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981), for the principle that a suspect "may waive his *Miranda* rights if he initiates further communication, exchanges, or converses with the police." *State v. Findley,* 2008 WL 4776934 at *2. The *Edwards* court, however, decided only that one may waive his Fifth Amendment right to *counsel* by reinitiating a conversation with law enforcement. *See Edwards*, 451 U.S. at 484-85 ("We further hold that an accused, such as Edwards, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.") The Supreme Court of the United States has never expressly held that a suspect may waive his right to *silence* under the Fifth Amendment in the same manner.

With respect to an unequivocal assertion of one's right to remain silent, the Supreme Court's last word is found in *Michigan v. Mosley*, 423 U.S. 96 (1975). Interrogators must scrupulously honor a suspect's unequivocal assertion of his right to remain silent. *Id.* at 102-04. Although the Minnesota courts may not have identified "the correct governing legal principle," they did not *unreasonably* apply United States Supreme Court precedent with respect to a suspect's waiver of his *Miranda* rights to the facts of Petitioner's case in reaching their conclusion. *See Williams*, 529 U.S. at 413.

It was not unreasonable, nor contrary to law, for the Minnesota courts to apply the reasoning of *Edwards* to the facts of the instant case in determining that Petitioner ultimately waived his right to silence. Notably, federal law is anything but "clearly established" on this point, in light of the Supreme Court's silence on the issue of whether an individual may waive his right to *silence* by reinitiating a conversation with law enforcement. This Court concludes that, in determining the admissibility of Petitioner's statements and affirming his conviction, the Minnesota state courts' decisions were neither "contrary to" nor "involved an unreasonable application of, clearly established Federal law." *See* 28 U.S.C. § 2254(d).

**B.    The Court concludes that Petitioner's conviction was not obtained in violation of the Constitution or laws of the United States.**

The trial court's decision to admit into evidence Petitioner's statement to law enforcement was not "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d). Thus, this Court does not find that the statement was improperly before the jury when it rendered its guilty verdict at trial. Petitioner's conviction did not violate the

Constitution, laws, or treaties of the United States, and Petitioner is, therefore, not entitled to habeas relief pursuant to 28 U.S.C. § 2254(d).

## IV. RECOMMENDATION

Based upon the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1) Petitioner's Petition for a Writ of Habeas Corpus [#1] be **DENIED** and that this action be **DISMISSED WITH PREJUDICE**;

2) Respondents' Motion to Dismiss [#7] be **DENIED as moot**; and

3) **JUDGMENT BE ENTERED ACCORDINGLY.**

It is further recommended, pursuant to 28 U.S.C. § 2253(c), that a Certificate of Appealability not be issued because Petitioner has failed to make a substantial showing of the denial of any constitutional right.

DATED: August 4, 2010     *s/ Franklin L. Noel*
                          FRANKLIN L. NOEL
                          United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **August 18, 2010**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within fourteen (14) days after service thereof. All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.